## Rogers v. Flick.

(Decided October 18, 1911.)

### Appeal from Boone Circuit Court.

1. Pass-way—Use Under Claim of Right.—Where a land owner uses a pass-way over the adjoining land of another under a claim of right, and not merely by permission, for a period of 15 years or more, such use ripens into an easement that the law will protect.

2. Pass-way—When Destroyed by Union of Estates.—An easement of a pass-way is not destroyed or extinguished by the union of the dominant and servient estates, unless the fee in both is acquired and united in the same person.

3. Pass-way—Use of by Owner of Servient Estate.—Where the owner of the servient estate becomes the tenant of the owner of the dominant estate, and uses the pass-way, he was exercising that right as tenant and not as owner of the servient estate.

4. Pass-way—Presumption of.—The use of a pass-way over the land of another for 40 years creates the presumption of a grant, and the burden is on the land owner to show that the use was merely permissive.

5. Pass-way—Buying with Notice of.—Where one buys land having a pass-way over it in the form of a plainly marked road, he will be charged with notice of the obvious fact that there was a pass-way over the land, and he consequently made the purchase subject to the incumbrance which was then an appurtenant to the land.

6. Pass-way—Permission to Use Same.—The mere fact that the owner of the servient estate never gave, and the persons using the pass-way never asked, permission, is not in itself sufficient to overcome the presumption in their favor arising from the long continued use of the way.

7. Damages—Measure of for Obstructing Pass-way.—The measure of damages for the obstruction of a pass-way is the diminution of the value of the use of the property during the time the obstruction continued.

8. Testimony—Order of Taking.—Under sub-section 4 of section 317 of the civil code, the trial judge, for good reasons, and in furtherance of justice, may permit plaintiff to introduce evidence in chief after the defendant has closed his case; and, under sections 592 and 593 of the Code, the trial judge may regulate the order of the proof so as to expedite the trial and enable the tribunal to obtain a clear view of the whole evidence, with as little annoyance to the witness, and as effective for the abstraction of the truth, as may be. This discretion will not be interfered with on appeal unless abuse thereof is manifest.

O. M. ROGERS and N. E. RIDDELL for appellant.

D. E. CASTLEMAN and SIDNEY GAINES, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Prior to 1849 Michael Clore and John Grant owned adjoining tracts of land near Bellevue, in Boone County. The county road which led from Bellevue to Burlington passed through the land of Clore, and within about 150 yards from the nearest point of Grant's 98 acres above referred to. In 1849 John Grant died, and his 98 acre tract was divided between his six children, the western tract of 15 acres, and the one nearest to the county road, having been set aside to Grant's daughter, Mrs. S. E. Rice, for life, with remainder to others. Mrs. Rice took possession of the property in about 1855, and has held possession of it ever since. Shortly thereafter, she and her tenants began to use the passway over the intervening land of Clore in going from the Rice tract to the county road. Between 1854 and 1865 Clore changed this passway to suit his own convenience and the convenience of Mrs. Rice and her tenants, at least twice. There was no objection made to these changes upon Clore's part, and it seems to have been done for the general accommodation of all concerned. In 1865 the county road was discontinued, and the Burlington and Bellevue Turnpike was located so as not to pass

through Clore's land, and took the place of the county
road. As Clore owned the land upon either side of the
abandoned county road, he assumed the ownership of
the land theretofore occupied by the road by reason of
the fact that his deeds carried his title to the middle of
the road. He enclosed the abandoned road by putting
a gate at its intersection with the new turnpike, and he
also put two other gates at points between the turnpike
and the passway. From 1865 to 1869, Mrs. Rice farmed
her land and used the passway over the Clore land as an
outlet to and through the abandoned road to the turn-
pike. From 1869 to 1897, a period of 28 years, Clore
rented the Rice land and farmed it in connection with
his own adjoining land; and, in doing so, used the pass-
way as it had formerly been used by Mrs. Rice. During
this period Clore was the only one that used the pass-
way. In 1897, the appellee, Flick, rented the Rice tract,
and continued to use the passway. In 1898 or 1899
Clore took exception to Flick's using the passway for
the purpose of hauling willows from other land over this
passway on to the Rice land, and locked the gate with
a chain and padlock. Upon consulting his lawyer, how-
ever, he found that he was mistaken in his claim, where-
upon he removed the lock within the next day or two,
and apologized for his conduct. In October, 1899, Clore
sold his tract of land to appellant, Rogers, and shortly
thereafter Rogers locked the gate and refused to permit
Flick to further use the passway, whereupon Flick
brought this suit to enjoin the further interference with
his use of the passway, and for $500 damages. The cir-
cuit judge granted the injunction against Rogers, and
gave Flick a judgment for $20 damages. From that
judgment Rogers appeals, and Flick prosecutes a cross-
appeal asking that his judgment for damages be in-
creased to $500.

There is very little dispute about the facts, and we
find little difficulty in the case. Rogers contends that
the use of this passway by Mrs. Rice and her tenants
was merely a permissive use, and extended only from
the time Clore ceased to be Mrs. Rice's tenant in 1897,
to 1909, when this suit was brought, a period of only 12
years. Counsel for appellant admits that if Mrs. Rice
and her tenants had used this passway under a claim
of right, and not merely by permission, for a period of
15 years, then such use would have ripened into an ease-
ment that the law will protect. We are clearly of opin-

ion, however, that appellant is in error in both of his contentions, since it is plain from the evidence that this right of way has been used certainly since 1865, a period of more than 40 years, and that at no time did Mrs. Rice or her tenants ever ask permission to use it, but asserted a right as one to which they were entitled.

Appellant would deduct from this adverse use by Mrs. Rice and her tenants the period of 28 years—from 1869 to 1897—during which Clore occupied the Rice land as her tenant, upon the theory that Clore was using a right of way over his own land, and that it could not be adverse under those circumstances. But this contention is erroneous for two reasons; first, because the use of the passway antedated Clore's tenancy by at least four or five years, and secondly, because an easement is not destroyed or extinguished by the union of the dominant and servient estates, unless the fee in both is acquired and united in the same person. 2 Washburn on Real Property, 373.

Although Clore owned the fee in the servient estate, he was only a tenant of the dominant estate which was served by the passway; and, in using the passway, he was exercising that right as the tenant of Mrs. Rice, and not as the owner of his own land.

Furthermore, when Rogers bought Clore's land, he had full notice that Mrs. Rice was claiming this passway, which was a plainly marked road, and formed an incumbrance appurtenant to the Clore land. This case in its controlling facts is quite like Sparks v. Rogers, 29 Ky. Law Rep., 1170, where the court said:

"The decided preponderance of the evidence is that the passway was used without let or hindrance during the time that Amos Mann owned the farm, by the family of Mann, and all persons going to and from the public road to his premises. The persons using the passway, with rare exceptions, did not ask, nor were they granted permission, nor was any objection made to their use of it; and it is contended by appellee that the passway was never used as a matter of right, but at all times by the permission of Charles Sparks; and he relies on the line of cases holding that the mere permissive use of a passway without any claim of right on the part of the person using it, although continued for a long period of time, does not ripen into a right that can not be revoked by the owner of the soil. It has, however, been decided in a number of cases that the use of a passway for many

years creates the presumption of a grant and that the burden is on the land owner to show that the use was merely permissive. (Smith v. Pennington, 28 Ky. Law Rep., 1282.) Since March, 1888, there has been no interruption or obstruction of the use of the passway, and when appellee purchased in December, 1902, the Charles Sparks land this passway was a plainly marked road through the farm to the Amos Mann land, and appellee must be charged with notice of the obvious fact that there was a passway through the place and consequently made the purchase subject to the incumbrance which was then, and had been for years, an appurtenant to the Mann land. (Wright v. Willis, 23 Ky. Law Rep., 565; Lebus v. Boston, 21 Ky. Law Rep., 411.)''

And in Schwer v. Martin, 29 Ky. Law Rep., 1222, the court approved what had been said in Sparks v. Rogers, and in Wright v. Willis, and closed its opinion with the following language:

''Where the use has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a claim of right, and when the proprietor undertakes to close a passway, the burden is on him to show that the use was merely permissive, and to explain away the presumption that its uninterrupted enjoyment for more than fifteen years was not exercised under a claim of right. The mere fact that the owner of the servient estate never gave, and the persons using the passway never asked, permission, is not in itself sufficient to overcome the presumption in their favor arising from the long continued use of the way.

''This passway having been used and enjoyed by the owners of the land now occupied by appellee for more than fifty years, without interruption or interference, the presumption must be indulged, in the absence of satisfactory evidence to the contrary, that its use was enjoyed as a matter of right, and it is now too late for the owner of the servient estate to close or discontinue this passway. Smith v. Pennington, 28 Ky. Law Rep., 1282; Anderson v. Southworth, 25 Ky. Law Rep., 776; Bowens v. Cooper, 23 Ky. Law Rep., 2065; Clay v. Kennedy, 24 Ky. Law Rep., 2034; Lisle v. Embry, 19 Ky. Law Rep., 867; Bennedict v. Johnson, 19 Ky. Law Rep., 937.''

It is unnecessary to quote further authority upon this point.

In this case the proof clearly shows that the use of

this passway by Mrs. Rice and her tenants was not permissive merely, but was exercised under a claim of right, and that it has continued for more than 40 years.

Upon the question of damages appellant insists that since the petition does not show or claim special damages, the appellee, having succeeded in his action, was entitled to nominal damages only, and that the court erred in giving appellee a judgment for $20 damages; while appellee insists, upon his cross-appeal, that the court should have assessed his damages under the proof at $500. We think both are in error. In Bannon v. Rohmeiser, 17 Ky. Law Rep., 1378; L. & N. R. R. Co. v. Carter, 25 Ib., 1303, and Big Sandy R. R. Co. v. Bays, 31 Ky. Law Rep., 288, this court laid down the rule that the measure of damages for the obstruction of a passway is the diminution of the value of the use of the property during the time the obstruction continued. In the case at bar the rental value of the Rice land was $50 per annum, and the obstruction continued for not exceeding two months. In fixing the damages at $20 we are of opinion that the circuit judge exercised a reasonable judgment in that respect.

Many exceptions have been taken to the competency of certain parts of the evidence, but, in view of the fact that the controlling facts of the case are clearly shown by other testimony, and were substantially admitted by the contending parties to be true, it is not necessary to pass upon these numerous exceptions. It was not the facts, but the law, concerning which the parties chiefly differed.

Appellant further contends that the circuit judge erred in failing to sustain his exception to the entire deposition of Mrs. Rice, because she was permitted to testify in chief, although it is claimed to be in rebuttal, after the appellant had closed his evidence. It appears, however, that Mrs. Rice was quite old and infirm, and could not conveniently testify sooner than she did. Under subsection 4 of section 317 of the Civil Code, the trial court, for good reasons, in furtherance of justice, is expressly authorized to permit the plaintiff to introduce evidence in chief after the defendant has closed his case; and under sections 592 and 593 the trial court has the power to regulate the order of the proof so as to expedite the trial, and enable the tribunal to obtain a clear view of the whole evidence, with as little annoyance to the witness, and as effective for the abstraction

of the truth, as may be. This discretion will not be interfered with on appeal, unless abuse thereof is manifest. Fuqua v. Commonwealth, 118 Ky., 578. Under the facts attending the taking of Mrs. Rice's deposition, we are clearly of opinion that the court did not abuse its power in this instance.

Judgment affirmed upon both appeal and cross-appeal.